IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI


| | | |
|---|---|---|
| MARYANNE MCCAULEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. 4:26-CV-00383 |
| PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, MARYANNE MCCAULEY, by and through the undersigned counsel, and files this, her Complaint against Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff MARYANNE MCCAULEY (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in St. Peters, Missouri, (St.

1

Charles County).

3.   Plaintiff is disabled as defined by the ADA.

4.   Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.   Plaintiff uses a wheelchair for mobility purposes.

6.   In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.   Defendant, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST (hereinafter "PITMAN PENNY L REVOCABLE INTERVIVOS TRUST") is a trust that transacts business in the State of Missouri and within this judicial district.

8.   Defendant, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST, may be properly served with process via its Trustee, to wit:  c/o Penny L. Pitman, Trustee, 16010 State Highway TT, Marthasville, MO  63357-2984.

2

9. Defendant, FAULT LINE FOODS LLC (hereinafter "FAULT LINE FOODS LLC") is a domestic limited liability company that transacts business in the State of Missouri and within this judicial district.

10. Defendant, FAULT LINE FOODS LLC may be properly served with process via its Registered Agent, to wit:  c/o Justin Pollock, Registered Agent, 868 Saratoga Hts, Saint Charles, MO  63304-7307.

**FACTUAL ALLEGATIONS**

11. On or about October 2, 2025, Plaintiff attempted to be a customer at Fault Line Foods, a restaurant located at 105 N. Main Street, St. Charles, MO  63301, referenced herein as "Fault Line Foods" but was unable to do so due to barriers which prevented her from entering Fault Line Foods.  *See* Selfie attached as Exhibit 1.  Moreover, there was no obvious sign indicating a policy in place that would facilitate entry for individuals with disabilities.

12. Also on October 2, 2025, Plaintiff attempted to be a customer at Mr. Meowski's Sourdough, a French bakery located at 107 N. Main Street, St. Charles, MO  63301, which is in the same building and directly next store to Fault line Foods.  However, due to the barriers to access identified in this Complaint, Plaintiff was also unable to enter Mr. Meowski's Sourdough due to the continuing barriers to access present at the Property impacting Plaintiff's disabilities.

13. Plaintiff is currently deterred from patronizing both Mr. Meowski's Sourdough and Fault Line Foods until the barriers to access identified in this Complaint are removed.

14. Defendant, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST is the owner or co-owner of the real property and improvements that Fault Line Foods is situated upon and that is the subject of this action, referenced herein as the "Property."

3

15. Defendant, FAULT LINE FOODS LLC, is the lessee or operator of the real property and improvements that are the subject of this action.

16. Defendant, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

17. Plaintiff's access to Fault Line Foods, located at 105 N. Main Street, St. Charles, MO 63301, St. Charles County Property Appraiser's property identification number: 002570A000 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations that exist at the P0roperty, including those set forth in this Complaint.

18. Plaintiff lives only 10 miles from the Property.

19. While this is the first time Plaintiff attempted to be a customer at Fault Line Foods, Plaintiff often travels to Main St. in the city of St. Charles as she frequents restaurants and shops there often. Plaintiff has visited Main St. as a customer more than ten times in the previous two years. For instance, she was recently a customer of Picasso Coffee, which is directly next door to Fault Line Foods.

4

20.     Plaintiff intends to revisit the Property after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer to Fault Line Foods, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

21.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access, as such, Plaintiff is deterred from returning until the barriers to access are removed.

22.     Plaintiff travelled to the Property as a customer more than ten times before and as an independent advocate for the disabled, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

23.     Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and she would need to use an alternative accessible parking space in the future on her subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

24.      Plaintiff's inability to fully access the Property and Fault Line Foods in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

25.      On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

26.      Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)      the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

27.    Congress explicitly stated that the purpose of the ADA was to:

(i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

\* \* \* \* \*

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

28.    The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

29.    The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

30.    The Property is a public accommodation and service establishment.

31.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

32.    Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

33.    The Property must be, but is not, in compliance with the ADA and ADAAG.

34.    Plaintiff has attempted to, and has to the extent possible, accessed the Property in her capacity as a customer at the Property and as an independent advocate for the disabled, but

could not fully do so because of her disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

35.    Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

36.    Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC have discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

37.    Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to

and usable by Plaintiff and other persons with disabilities.

38.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

  i. At Fault Line Foods, due to an approximate 6-inch vertical rise in front of the door, the Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the Property as a customer when using public transportation.

  ii. At Fault Line Foods, due to an approximate 6-inch vertical rise in front of the door, the total vertical rise of accessible route leading from public sidewalk is greater than ½ (one-half) inch and thus, the accessible route is not ramped in compliance with Section 405 or 406, this is a violation of Section 303.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because the vertical rise in the form of stairs would make it almost impossible for Plaintiff to safely access the interior of this public accommodation.

  iii. At Fault Line Foods, due to an approximate 6-inch vertical rise in front of the door, the accessible route leading into this public accommodation contains at least one vertical rise in excess of ¼ inch in violation of Section 303.2 of the

9

2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to attempt to utilize the accessible route as it increases the likelihood of the wheelchair tipping.

iv.     At Fault Line Foods, due to an approximate 6-inch vertical rise in front of the door, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand.  When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the presence of an excessive vertical rise.

v.      At Fault Line Foods, the accessible entrance has improper door hardware which requires tight grasping and/or twisting of the wrist in violation of Sections 309.4 and 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

vi.     At Fault Line Foods, the door to the accessible entrance lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent protruding wall/window, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the

10

door hardware and open the door.  The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

vii. Inside Fault Line Foods, the sales and services counter is lacking any portion of the counter that has a maximum height of 36 (thirty-six) inches from the finished floor in violation of section 904.4 of the 2010 ADAAG standards, all portions of the sales and service counter exceed 36 (thirty-six) inches in height from the finished floor. This barrier to access would make it difficult for Plaintiff to properly transact business at the Property as Plaintiff is in a wheelchair which makes his height much lower than a standing individual, so a surface with a maximum height of 36 inches above the finished floor is necessary for Plaintiff to sign credit card receipts.

viii. At Mr. Meowski's Sourdough, due to an approximate 6–7-inch vertical rise in front of the door, the Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the Property as a customer when using public transportation.

ix. At Mr. Meowski's Sourdough, due to an approximate 6–7-inch vertical rise in front of the door, the total vertical rise of accessible route leading from public sidewalk is greater than ½ (one-half) inch and thus, the accessible route is not ramped in compliance with Section 405 or 406, this is a violation of Section 303.4 of the 2010 ADAAG standards. This barrier to access would make it

dangerous and difficult for Plaintiff to access the units of the Property because the vertical rise in the form of stairs would make it almost impossible for Plaintiff to safely access the interior of this public accommodation.

x.  At Mr. Meowski's Sourdough, due to an approximate 6–7-inch vertical rise in front of the door, the accessible route leading into this public accommodation contains at least one vertical rise in excess of ¼ inch in violation of Section 303.2 of the 2010 ADAAG Standards.  This barrier to access would make it difficult and dangerous for Plaintiff to attempt to utilize the accessible route as it increases the likelihood of the wheelchair tipping.

xi.  At Mr. Meowski's Sourdough, due to an approximate 6–7-inch vertical rise in front of the door, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand.  When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the presence of an excessive vertical rise.

xii.  At Mr. Meowski's Sourdough, the accessible entrance has improper door hardware which requires tight grasping and/or twisting of the wrist in violation of Sections 309.4 and 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

12

xiii.   At Mr. Meowski's Sourdough, the door to the accessible entrance lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent protruding wall/window, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the door hardware and open the door.  The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

xiv.   There is not at least one accessible entrance to each tenant space in the building that complies with Section 404 of the 2010 ADAAG standards which is a violation of Section 206.4.5 of the 2010 ADAAG Standards.

xv.   As not all entrances comply with Section 404 of the 2010 ADAAG Standards, entrances that do comply with Section 404 of the 2010 ADAAG Standards are required to have signage identified by the International Symbol of Accessibility indicating an accessible entrance, however, no such signage exists on the Property in violation of Section 216.6 of the 2010 ADAAG Standards. Moreover, there is a lack of directional signage indicating the location of the nearest accessible entrance.  This barrier to access would make it difficult for Plaintiff to locate an accessible entrance on the Property.

xvi.   At the rear of the building on the Property there is a parking lot open to the public with more than four spaces, yet, the Property has no accessible parking

13

spaces complying with Section 502.1 of the 2010 ADAAG standards in violation of Section 208.2 of the 2010 ADAAG standards.  The Property is required to have one accessible parking space, but has zero accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space and limited the travel options to visit the Property.

xvii.   Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

xviii.   As a result of the barrier to access identified above, there is not an accessible route leading inside the Property of either Mr. Meowski's Sourdough or Fault Line Foods to the accessible restroom, as a result, Plaintiff attempted to enter both public accommodations but was unable to gain entry.  As such, Plaintiff was unable to determine additional barriers to access present in the restroom of either public accommodation.  Defendants, therefore shall be required to provide at least one accessible restroom compliant with Sections 603, 604 and 606 of the 2010 ADAAG standards.

39.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

40.   Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

41.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

14

42.    All of the violations alleged in paragraph 38 herein are readily achievable to modify to bring the Property into compliance with the ADA because the modifications necessary to do so are specifically referenced within 28 C.F.R. § 36.304 as readily achievable.

43.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

44.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC have the financial resources to make the necessary modifications since the parcel is valued at $529,304.00 according to the Property Appraiser website.

45.    The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

46.    While the Property may fall under qualified historic properties, all of the barriers to access identified in this Complaint can be removed and/or mitigated with modifications and adoption of policies which do not threaten the historical significance or character of the Property.

47.    Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

15

48.    Plaintiff's requested relief serves the public interest.

49.    The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC.

50.    Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC pursuant to 42 U.S.C. §§ 12188 and 12205.

51.    Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)    That the Court find Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC in violation of the ADA and ADAAG;

(b)    That the Court issue a permanent injunction enjoining Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC from continuing their discriminatory practices;

(c)    That the Court issue an Order requiring Defendants, PITMAN PENNY L REVOCABLE INTERVIVOS TRUST and FAULT LINE FOODS LLC to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

16

(d)     That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: March 17, 2026.                    Respectfully submitted,

                                          Law Offices of
                                          THE SCHAPIRO LAW GROUP, P.L.

                                          /s/  Douglas S. Schapiro
                                          Douglas S. Schapiro, Esq.
                                          State Bar No. 54538FL
                                          The Schapiro Law Group, P.L.
                                          7301-A W. Palmetto Park Rd., #100A
                                          Boca Raton, FL 33433
                                          Tel: (561) 807-7388
                                          Email: schapiro@schapirolawgroup.com

17